# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

DIWANETRA L. HILL       CIV. ACTION NO. 3:21-02516

VERSUS          JUDGE TERRY A. DOUGHTY

ANDY BROWN, ET AL.       MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 18], as supplemented, filed by Defendants, Sheriff Andy Brown, Richard Brazzel, and Warden Tim Ducote. The motion is opposed. For reasons explained below, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

## Background

On August 16, 2021, Diwanetra L. Hill ("Hill") filed the instant civil rights action against her former employer, Sheriff Andy Brown, who, together with LaSalle Management Company, L.L.C. ("LMC"), operated the Jackson Parish Correctional Center ("JPCC") where Hill worked during the relevant period. In addition to suing Sheriff Brown in his individual and official capacities, Hill also sued JPCC Warden Tim Ducote and JPCC Assistant Warden Richard Brazzel in both their individual and official capacities.[1] Hill further named LMC as a Defendant, but the Clerk of Court dismissed that party after Hill failed to perfect service timely. (May 13, 2022 Order [doc. # 32]). In response to two motions to dismiss filed by JPSO, *see* discussion,

---

[1] The court will refer to Defendants, Brown, Hill, and Ducote, collectively as "JPSO."

*infra*, Hill twice amended her complaint, and, thus, the operative complaint at this time is the Second Amended Complaint ("SAC") [doc. # 27].[2]

Hill, who is an African-American female, worked at the JPCC for a roughly five-month period from May 15 through October 9, 2019, where she served as a licensed registered nurse. However, Hill asserted that she suffered race-based hostile work environment and retaliation that culminated with her discriminatory discharge from employment.

Hill signed a charge with the Equal Opportunity Commission ("EEOC") "around January 22, 2020," and received a right to sue letter on or about May 18, 2021.  (SAC, ¶ 27).  Hill asserted claims for race discrimination and retaliation in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.; 42 U.S.C. § 1981 via 42 U.S.C. § 1983, and for conspiracy under 42 U.S.C. § 1985(3).[3]  (SAC, ¶ 1).  She also invoked the court's supplemental jurisdiction to consider unasserted claims under state law.  *Id*.

The SAC is comprised of two counts, with at least one sub-claim:  1) race discrimination in the workplace, which, with Hill's acquiescence, JPSO has construed as a hostile work environment claim, leading to unlawful discharge; and 2) retaliation.  *Id*., ¶¶ 19-24.  Hill seeks an award of compensatory and punitive damages for mental distress, humiliation, past and future

---

[2] An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  Here, the SAC does not adopt or incorporate the earlier iterations of the complaint.

[3] Hill represented to the court that she had removed the conspiracy allegations from the SAC. (Pl. Reply Memo., pg. 8 [doc. # 25]).  Accordingly, the court will deem the conspiracy claim abandoned and withdrawn.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim is abandoned if the plaintiff fails to defend a claim in response to a motion to dismiss).

2

embarrassment, and past and future lost income. *Id.* She also seeks punitive damages against Ducote, Brazzel, and Brown, in their individual capacities, because they acted with reckless disregard for her federally protected rights by tolerating a racially hostile work environment, imposed racially discriminatory work conditions, retaliated, and otherwise permitted discrimination on the basis of race. *Id.*, ¶ 25. Should she prevail, Hill also seeks an award of attorney's fees. *Id.*, ¶ 27. Finally, Hill requests declaratory and injunctive relief against JPSO. *Id.*, Prayer.

JPSO filed its opening Rule 12(b)(6) motion to dismiss on December 15, 2021. [doc. # 9]. In response, Hill sought and obtained leave of court to file her First Amended Complaint ("FAC") on January 6, 2022. [doc. #s 11-14]. In light of the amended pleading, JPSO withdrew its initial Rule 12(b)(6) and filed the instant motion to dismiss the FAC on January 20, 2022. [doc. #s 16-18]. However, Hill filed another motion for leave to amend her complaint, which the court also granted. [doc. #s 20, 24-27]. In so doing, the undersigned explained that when a plaintiff amends her complaint while a motion to dismiss is pending, and defendants maintain that the defects raised in the original motion are not cured by the pleading, then the court may consider the motion to dismiss as being addressed to the amended pleading. *See Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018). Accordingly, the court permitted the parties to supplement their memoranda to tailor their arguments to the SAC. *See* April 8, 2022 Mem. Order [doc. # 26].

On April 22, 2022, JPSO filed a supplemental memorandum in support of its motion to dismiss. [doc. # 28]. On May 5, 2022, Hill filed a supplemental opposition to the renewed motion to dismiss. [doc. # 30]. Finally, on May 12, 2022, JPSO brought

3

briefing to a close when it filed a supplemental reply brief in support of the motion to dismiss. [doc. # 31]. Accordingly, the matter is ripe.

### Rule 12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly.*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid

4

legal theories, even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002); *see also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Supreme Court explained that the *McDonnell Douglas* framework[4] "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992, 997.[5] Accordingly, a plaintiff's complaint need only comply with Rule 8, which requires no more than "a short and plain

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).
[5] Furthermore, *Twombly* did not overrule *Swierkiewicz. See Twombly*, 550 U.S. at 569-70, 127 S.Ct. 1955.

statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8; *Swierkiewicz*, 423 U.S. at 515, 122 S.Ct. 992.

However, the Fifth Circuit maintains that the prima facie standard *is* relevant at the motion to dismiss stage at least in the sense that a plaintiff is obliged to plead facts as to each of the ultimate *elements* of her claim sufficient to render the case plausible.  *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).  In other words, it may be helpful to reference the *McDonnell Douglas* framework on which plaintiff must rely if she bases her claim on circumstantial evidence.  *Id.*  Nonetheless, *McDonnell Douglas* is not dispositive at the pleading stage because it may not even apply if discovery reveals direct evidence of discrimination.  *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

More recently, the Supreme Court has clarified that "*McDonnell Douglas* can provide no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim."  *Comcast Corp. v. Nat'n Ass'n of African Am.-Owned Media*, ___ U.S. ___, 140 S.Ct. 1009, 1019 (2020).  Moreover, "the essential elements of a claim remain constant through the life of a lawsuit."  *Id.*  Therefore, a claim under 42 U.S.C. § 1981 follows the general rule that a "plaintiff must demonstrate that, but for the defendant's unlawful conduct, [her] alleged injury would not have occurred."  *Id.*  Although the *McDonnell Douglas* framework arose at a time when but-for causation was the undisputed test, a plaintiff still must set forth facts to support the essential elements of her claim to survive a motion to dismiss.  *Id.*

### Plaintiff's Allegations

During the relevant period, Defendant, Sheriff Andy Brown, was Hill's employer who made decisions regarding her employment.  (SAC, ¶ 4).  Hill began working for Brown on May 15, 2019, and successfully completed her 90-day probationary period.  *Id.*, ¶ 2.

In July 2019, JPSO replaced Carla Hall,[6] who was Director of Nursing and Health Service Administrator ("DON/HSA") and African-American, with Jessie Riesen, a white female. *Id.*, ¶¶ 6-7.  In contrast to Hall, JPSO provided necessary support and personnel to Riesen.  *Id.*

Following her promotion to DON/HSA, Riesen proceeded to implement the following series of discriminatory employment practices:

1) All extra staff she hired were white.

2) She fired black employees and replaced them with white employees, many of whom were acquaintances, friends, or associates of Riesen.  *See also* ¶ 14.

3) "She changed a practice that only white nurses performed vital signs for incoming prisoners. There would be a minimum of about 50 prisoners at time. The vital signs task only takes a few minutes.  Once these were finished, the white nurses were allowed to go home for the day. African American nurses like Hill, on the other hand, performed intake which took twice as long on average. Once the African American nurses were done, which was usually late, they were allowed to leave."

4) When black nurses treated *black* prisoners, Riesen would question the nurses' procedures.  However, when nurses treated or examined *white* prisoners, no such delay or questioning occurred.  Furthermore, black inmates were made to wait unreasonably long periods for dental treatment, but white inmates were not.

5) Riesen excluded black nurses from the nurse's office, but permitted entry to white nurses.

6) Riesen twice moved Carla Hall's desk, without cause.

7) Riesen implemented a new cell phone, dress code, and leave policy, and applied it unequally to blacks and whites.

8) Riesen, Warden Ducote, and Sheriff Brown applied dress and grooming standards unequally.  For example, certain black nurses had to wear a coat in the summer. Hair grooming standards also were applied unequally.

9) Riesen unreasonably questioned black nurses about treating black inmates.

---

[6] Hall filed a similar lawsuit before this court against overlapping defendants that includes many of the same allegations and issues raised here.  *See Hall v. LaSalle Management Co.*, Civ. Action No. 21-2680 (W.D. La.).

(SAC, ¶ 9).  Hill contends that these unlawful practices and treatment created a racially hostile work environment.  *Id*., ¶¶ 9-10.  Furthermore, Sheriff Brown supported Riesen's discriminatory practices.  *Id*., ¶ 16.

On July 18, 2019, Sheriff Brown and Warden Ducote interviewed Carla Hall after they had heard rumors that she was unhappy because of discriminatory treatment.  *Id*., ¶ 8.  At the meeting, Brown and Ducote implied that Hall would face substantial discipline, including discharge if she talked about her complaint of discrimination or the racial attitudes of co-workers.  *Id.*

On July 22, 2019, there was a mandatory staff training session that was taught by Major LeBlanc (likely incorrectly named in the SAC as "LeBlance").  *Id*., ¶ 11.  LeBlanc played a video at the training session that included background music with racial slurs such as "ni**er," that had no relevance to the training.  *Id.*  Carla Hall complained to LeBlanc, who replied that he did not know how to address the situation.  *Id.*  The next day, LeBlanc played another video that also had racial slurs, including the word, "ni**er." *Id.*  This time, however, LeBlanc provided a disclaimer, stating that the video contained language that some might find offensive.  *Id.*

The videos offended and upset Hill.  *Id.*  Carla Hall reported the language, on her own behalf and on behalf of others, including Hill, to Sheriff Brown who said that he would discuss the matter with LeBlanc.  *Id.*  Brown admitted that it looked like discrimination, but took no action to remediate the complaint for approximately six months, i.e., until January 2020.  *Id.*  In addition, Captain Kevin Kelly had a confederate license plate on his vehicle.  *Id.*

Because of the constructive demotion of Carla Hall, the discriminatory practices of Riesen, the offensive training films, and the treatment of black nurses, Hill and several co-

workers complained amongst themselves about these and other racially discriminatory practices at the JPCC.  *Id.*, ¶ 12.  Sheriff Brown and Warden Ducote became aware of these complaints. *Id*.

On August 7, 2019, Sheriff Brown, with Warden Ducote also in attendance, convened a meeting of nurses to discuss complaints of discrimination that had been brought to his attention. *Id.*, ¶ 12.  At the meeting, Brown stated that he had heard about the discrimination complaints levied against Riesen.  *Id*.  However, he aggressively "ranted and hollered" at the nurses and told Hill, and others in attendance, that if they did not like what was going on, they could "hit the door."  *Id*.  Brown intimidated the black nurses to stop complaining about Riesen's practices. *Id*.

Hill further asserted that there was widespread nepotism at the JPCC that favored family members of white employees.  *Id.*, ¶ 14.  Whites were granted privileges not allowed others.  *Id*. Typically, all management positions at the JPCC were held by whites.  *Id*.  The nepotism had a disparate impact on black employees.  *Id*.

On or about October 9, 2019, Assistant Warden Brazzel fired Hill for alleged insubordination to Rachel Watson, the white female DON.  *Id.*, ¶ 15.  Watson incorrectly accused Hill of not conducting a lockdown assessment.  *Id*.  However, Hill had completed all assigned work and was performing her job satisfactorily.  *Id*.  Hill had not been assigned the assessment responsibility.  *Id*.  Even if she had, other whites had refused orders, but had received lesser discipline in lieu of job termination.  *Id*.  Hill appealed her dismissal to Warden Ducote, who, after investigation indicated that Hill could return to work because of lack of evidence of

insubordination.  *Id*.  However, Hill never returned to work because no one ever called and told her to return.  *Id*.  Hill was replaced by a white female nurse, Kelly Staples.  *Id*.

## Analysis

### I.    Non-Actionable Individual and Official Capacity Claims

Hill sued Sheriff Brown, Warden Ducote, and Assistant Warden Brazzel in their official and individual capacities.  (SAC, ¶ 3).  As Hill's employer, Sheriff Brown, in his official capacity, is the proper defendant for purposes of her Title VII claims.  *See Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 465 (5th Cir. 2001).  Moreover, because she is suing the Sheriff as her employer in his official capacity under Title VII, there is no individual liability against him under Title VII.  *Id*., (citing *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998)).  Further, under Title VII, "relief ... is available only against an employer, not an individual supervisor or fellow employee."  *Knox v. City of Monroe*, 551 F.Supp.2d 504, 507 (W.D. La. 2008) (quoting *Foley v. University of Houston Sys.,* 355 F.3d 333, 340, n. 8 (5th Cir. 2003)).  Accordingly, as seemingly acknowledged by the SAC, Hill does not state a Title VII claim for relief against Sheriff Brown, Warden Ducote, and Assistant Warden Brazzel, in their individual capacities.

The court further observes that Hill cannot maintain an official capacity claim against Warden Ducote and Assistant Warden Brazzel under Title VII or § 1983, where, as here, she has sued her employer, even if the employer is considered a "municipality."  *Moton v. Wilkinson*, Civ. Action No. 08-1356, 2009 WL 498487, at *1 (E.D. La. Feb. 26, 2009) (citing *Smith v. Amedisys, Inc.,* 298 F.3d 434, 449 (5th Cir.2002); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir.1999); and *Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001).[7]

---

[7]  The proper defendant for a § 1983 *Monell* claim is the "official or government body with final policymaking authority over the person who committed the violation."  *Lester v. Caddo Par.*, Civ. Action No. 15-2008, 2017 WL 6610329, at *6 (W.D. La. Dec. 27, 2017) (citing *inter alia*,

Accordingly, Hill's official capacity claims against Ducote and Brazzel are subject to dismissal.

In addition, the Supreme Court has held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735; 109 S.Ct. 2702, 2723 (1989). Nonetheless, § 1981 does not impose "personal liability on elected officials for discrimination in the terms and conditions of local government employment contracts." *Oden*, 246 F.3d at 464. As an elected official,[8] Sheriff Brown may not be held liable under § 1981 via § 1983, in his individual capacity. *Davis v. Matagorda Cnty.*, Civ. Action No. 18-0188, 2019 WL 1015341, at *15 (S.D. Tex. Mar. 4, 2019), *R&R adopted*, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019) (citations omitted); *see also Knox*, 551 F. Supp. 2d at 508, n.6 (noting that it "appears . . . that the Fifth Circuit draws a distinction between elected officials and unelected municipal employees").[9]

Therefore, it is recommended that Hill's official capacity claims against Warden Ducote

---

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999)). Therefore, an official capacity suit is viable *only* against the person(s) who is responsible for formulating official policy that caused the constitutional violation. *Stuart v. Russell, et al.,* Civ. Action No. 21-01231, 2021 WL 4820244, at *4 (W.D. La. Oct. 15, 2021) (Doughty, J.); (citations omitted). There is no indication that Warden Ducote or Assistant Warden Brazzel were final policymakers.

[8] LA. CONST. ART. V, § 27 ("In each parish a sheriff shall be elected for a term of four years.").

[9] Hill acknowledged in her brief the existence of case law which suggested that an elected official like Sheriff Brown cannot be sued individually for violations of § 1981. (Pl. Opp. Brief, pg. 10, n.2) (citing *Knox, supra*). Nonetheless, Hill attributed this line of authority to an interpretation premised upon Title's VII's 42 U.S.C. § 2000e(f), rather than § 1981. However, *Knox* relied on a section of the Fifth Circuit's decision in *Oden* that clearly was discussing § 1981, and which necessarily circumscribes this court's autonomy to give effect to Hill's argument.

and Assistant Warden Brazzel under Title VII and § 1981 through § 1983; her individual capacity claims against Sheriff Brown, Warden Ducote, and Assistant Warden Brazell under Title VII; and her individual capacity claim against Sheriff Brown under § 1981 through § 1983, be dismissed with prejudice.

## II.     Prima Facie Case

Broadly speaking, the "inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (citing, *inter alia*, *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996)). Indeed, "[w]hen used as parallel causes of action, Title VII and [S]ection 1981 require the same proof to establish liability . . . " *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 220 n.3 (5th Cir. 2016) (citation omitted); *see also Chen v. Ochsner Clinic Found.*, 630 Fed. App'x. 218, 227 (5th Cir. 2015) (analysis of employment discrimination claims under Title VII and § 1981 is identical); *DeGrate v. City of Monroe*, No. 15-2641, 2017 WL 421673, at *4 (W.D. La. Jan. 30, 2017). Therefore, discriminatory intent may be shown in the same way under § 1983 as under Title VII—by either direct or circumstantial evidence. *Jones v. Hosemann*, 812 Fed. App'x. 235, 238 (5th Cir. 2020) (citing *Lee v. Conecuh Cty. Bd. of Ed.*, 634 F.2d 959, 961–62 (5th Cir. 1981); *Giles v. City of Dallas*, 539 F. App'x 537, 543 (5th Cir. 2013)).

Title VII prohibits an employer from, *inter alia*, discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Furthermore, the Supreme Court has held that Title VII proscribes the maintenance of "a discriminatorily hostile or abusive environment." *Matherne v. Ruba Mgmt.*, 624 Fed. App'x. 835, 839 (5th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In addition, § 1981 provides, in pertinent part, that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459–60; 95 S.Ct. 1716, 1720 (1975).[10]  Section 1981 also encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446; 128 S.Ct. 1951, 1954 (2008).  Section 1981, however, does not provide a separate cause of action against local government entities. *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702 (1989)).  Instead, violations of civil rights under § 1981 must be asserted against state actors under § 1983. *Id.*; *see* discussion, *infra*.

A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir. 1995). "[S]tatements or documents which show on its face that an improper criterion served as a basis- not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).

With the alleged exception of her retaliation claim, Hill did not proffer an argument that

---

[10] Even an at-will employee stands in a contractual relationship with her employer and thus may maintain a cause of action under § 1981. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050 (5th Cir. 1998).

her claims were supported by direct evidence of discrimination.  Accordingly, she must rely on circumstantial evidence to support her claims.  When, as here, a case is prosecuted on the basis of circumstantial evidence, the courts employ the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).  Under this framework, the plaintiff first must establish a prima facie case of discrimination or retaliation.  *Id*.

Again, Hill has advanced claims for unlawful discharge, hostile work environment, and retaliation.  The court will address these claims, and JPSO's arguments as they relate to them, in turn.

Insofar as Hill endeavored to sue Sheriff Brown in his official capacity for violations of § 1981 through § 1983,[11] she is required to show that the challenged conduct represented a custom or policy of the local government agency.  *Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001) (plaintiff cannot proceed under a theory of respondeat superior and must instead satisfy the "custom or policy" test fashioned for suits against a municipality under § 1983)  (citations omitted); *Knox, supra* (even if plaintiff had sued defendants for violations of rights provided by § 1981 through § 1983, she failed to allege a city policy or custom that resulted in the discrimination against her).

Accordingly, after considering whether Hill has stated a prima facie case to support her claims for violations of § 1981 through § 1983, the court must consider whether the challenged

---

[11]  It is less than clear from the SAC or the memoranda whether Hill endeavored to set forth claims against Sheriff Brown in his official capacity for violations of § 1981 through § 1983.  However, the court will consider the SAC, as if she did so intend.  Rule 8 does not "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12; 135 S.Ct. 346, 346–47 (2014).

14

conduct represented a custom or policy of the local government agency.  *See* discussion, *infra*.

Furthermore, "[c]laims against individual public officials under § 1981 are subject to the defense of qualified immunity, as are claims against such individuals under § 1983."  *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 338 (5th Cir. 2003) (internal citations omitted).  Here, Brazzel and Ducote raised qualified immunity as a defense, and, thus, the court must consider whether they are entitled to qualified immunity as to the remaining individual capacity claims asserted against them under § 1981 through § 1983.  *See* discussion, *infra*.

a)    <u>Discrimination</u>

To establish a prima facie case of race-based discrimination, a plaintiff must show that she "(1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class."  *Melvin v. Barr Roofing Co.*, 806 Fed. App'x. 301, 305 (5th Cir. 2020) (quoting *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)); *McCoy*, 492 F.3d at 556.

Hill is African-American, and thus, belongs to a protected class.  JPSO contends that Hill did not allege facts to show that she was qualified for her position at the time of her discharge. However, JPSO hired Hill as a nurse, and she had completed the probationary period prior to her termination.  This circumstance supports the plausible inference that she was qualified.  *See Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007) (where plaintiff possesses the same job qualification at the time that she suffered the adverse employment action as when her employer placed her in that position, then she need not otherwise show that she was qualified);  *Singleton v. Town of Vidalia*, Civ. Action No. 10-0163, 2011 WL 4591064, at *2

(W.D. La. Sept. 30, 2011) (defendant hired plaintiffs to work in the town's newly created position and, thus, plaintiffs are presumed to be technically "qualified" for the positions); *Roby v. Frontier Enterprises, Inc.*, Civ. Action No. 11-368, 2012 WL 4321312, at *2 (W.D. Tex. Sept. 19, 2012) (plaintiff was hired and, thus, presumably qualified for the position); *Valles v. Frazier*, Civ. Action No. 08-501, 2009 WL 3617534, at *3 (W.D. Tex. Oct. 27, 2009), *clarified on denial of reconsideration,* 2009 WL 4639679 (W.D. Tex. Nov. 30, 2009) (although not pled in the complaint, it is reasonable to infer that plaintiff  was qualified for her position because, *inter alia*, defendant hired her for the position).

Hill further alleged that Sheriff Brown discharged her from employment, which clearly constitutes an adverse employment action.  Finally, she was replaced by a white female, i.e., someone outside her class.  Moreover, Hill alleged that she had been incorrectly accused of failing to complete a task, when, in fact, she had not been assigned the task at all.  In any event, other white employees who had refused orders were not terminated, but instead received lesser discipline.  In sum, Hill has alleged a plausible claim for race-based discrimination.

　　b)　　Hostile Work Environment/Harassment

To establish a hostile work environment claim under Title VII, plaintiff must demonstrate that she

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations omitted). In assessing whether harassing conduct is sufficiently severe or pervasive to affect a term,

16

condition, or privilege of employment depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" or workplace competence." *Peterson v. Linear Controls, Inc.*, 757 Fed. App'x. 370, 374 (5th Cir. 2019) (citations omitted); *Hernandez, supra*; *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020).

Furthermore, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez, supra*. In other words, a subjective belief of racial motivation, without more, is insufficient to show a hostile work environment. *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x. 104, 107 (5th Cir. 2009). A one-time use of a racial epithet does not establish a hostile work environment. *See Peterson, supra* (citation omitted). Even an occasional racially insensitive joke is insufficient. *West, supra.*

Moreover, "[i]solated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 Fed. App'x. 229, 235 (5th Cir. 2015) (citations omitted). Thus, "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (citations and internal quotation marks omitted). In short, Title VII is not a general civility code for the American workplace. *West*, 960 F.3d at 743.

JPSO contends that Hill's allegations do not sufficiently plead elements four and five of her prima facie case for her hostile work environment claim. In so doing, JPSO emphasized that

17

the "oral utterance of the N-word and other racially derogatory terms, even in the presence of the plaintiff, may be insufficient to establish a hostile work environment." *Collier v. Dallas Cnty. Hosp. Dist.*, 827 Fed. App'x. 373, 378 (5th Cir. 2020), *cert. denied,* 141 S.Ct. 2657 (2021) (citations omitted); *see also Mosley v. Marion Cnty., Miss.*, 111 Fed. App'x. 726, 728 (5th Cir. 2004) (three incidents involving the use of racial slur does not create an issue of material fact to sustain a plaintiff's hostile work environment claim). JPSO also cited an unpublished Fifth Circuit decision which found that racial epithets, the hanging of confederate flags, and the failure to visit plaintiff when he was in the hospital did not rise to the requisite degree of severity and pervasiveness required to establish a prima facie case for a racially hostile work environment. *Lindsey v. Chevron USA Inc.*, 51 Fed. App'x. 929 (5th Cir. 2002).

The foregoing notwithstanding, "it is well established that '[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim.'" *Henry v. CorpCar Servs. Houston, Ltd.*, 625 Fed. App'x. 607, 611–12 (5th Cir. 2015) (citations omitted). Moreover, in a published decision, the Fifth Circuit recently joined other circuits in recognizing that "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates." *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (quoted sources omitted).

Here, Hill alleged that Major LeBlanc played training videos at a mandatory staff training in front of Hill and her co-workers, which included music with racial slurs, such as "n**er." By virtue of his rank, the court plausibly may infer that LeBlanc served in a supervisory capacity. Moreover, although Hill complained to LeBlanc about the offensive language in the video,

18

LeBlanc played another video the very next day that contained the same racial slurs, despite acknowledging that some employees might find the language offensive.

To be sure, the apparent indifference by Major LeBlanc to the use of racial slurs in training videos is not as severe as a supervisor calling an employee a racial slur to her face in front of her co-workers. *See Woods, supra*. Hill, however, has set forth other facts to support her hostile work environment claim. For example, she alleged that the Director of Nursing, Jessie Riesen, unreasonably questioned black nurses about the care that they provided to black inmates. Black inmates received medical and dental care less quickly than white inmates. Riesen also began to systematically discipline and discharge blacks so she could replace them with less qualified white employees. Riesen excluded black nurses, including Hill, from the nurse's office. Riesen also implemented disparate cell phone, dress code, and leave policies based on race. Riesen enacted the foregoing practices or policies, which suggests that they were ongoing, with no indication that they were changed or abated prior to Hill's discharge from employment.

In sum, Hill has alleged that she was subjected to objectively offensive conduct that, when considered in the light most favorable to her, may be deemed humiliating. Furthermore, the conduct unreasonably interfered with her work performance, i.e., the provision of medical care to all prisoners, regardless of race. Finally, the offensive conduct (the procedures enacted by Riesen) was of an ongoing and indefinite duration. The climate of distrust and undisguised hostility towards black nurses, including Hill, was only accentuated by Major LeBlanc's indifference towards the use of racial slurs in training videos.

Accordingly, upon consideration of the totality of the circumstances, and after drawing

19

all reasonable inferences in favor of Hill, the undersigned finds that the SAC sets forth sufficient facts to plausibly show that the harassment experienced by Hill affected a term, condition, or privilege of employment, as required to meet the fourth element of her prima facie case of her hostile work environment claim.  *See Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) (whether the harassment impacts the "terms or conditions of employment" is key).

JPSO further argues that Hill failed to allege facts to show that her employer knew or should of known of the alleged harassment, and then failed to take prompt remedial action.  First, where a superior participates in the alleged harassment, then a plaintiff need not prove the fifth element.  *See EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc).[12] Hill plainly alleged that Sheriff Brown called a nurses' meeting to discuss complaints of discrimination that had come to his attention.  (SAC, ¶ 12).  At the meeting, Brown told the black nurses to stop complaining about Riesen's practices, and that if they did not like it, they could "hit the door."  *Id*.  In addition, Hill alleged that Sheriff Brown supported and effectively endorsed Riesen's discriminatory practices.  *Id*., ¶¶ 12, 16.  Finally, Carla Hall complained to Brown about LeBlanc's use of racial slurs in training videos, but Brown took no action to address the complaint until months after Hill's discharge from employment.  *Id*., ¶ 11.

In short, to the extent Hill must do so, she has alleged sufficient facts to plausibly allege that Brown knew or should have known of the harassment that formed the basis for her hostile

---

[12] A supervisor under Title VII is defined as a person with the authority to make decisions that "effect a significant change in [an employee's] work status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or decisions causing a significant change in benefits."  *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013).  Under this definition, Sheriff Brown was a supervisor, and, at least arguably, Riesen and Ducote may also be considered Hill's supervisors.

work environment claim, but failed to take *prompt* remedial action.  Furthermore, "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior."  *Vance*, 570 U.S. at 427.[13]

Here, Brown not only failed to respond to complaints, he also effectively discouraged complaints from being filed (e.g., telling Hill and other nurses to "hit the door," if they did not care for his employment practices).  Therefore, the SAC includes facts to plausibly establish that Brown intentionally or negligently created or helped to perpetuate a hostile work environment. If established, Brown is subject to liability.  *Vance*, 570 U.S. at 448-49.

    c)    <u>Retaliation</u>

A prima facie case of retaliation under Title VII contemplates three elements:  "(1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (citation omitted).

JPSO disputes whether Hill has alleged facts to support the first and third elements of her prima facie case.  For purposes of the first element, an employee has engaged in a protected activity when she "either (1) opposed any practice made an unlawful employment practice by

---

[13] When a harasser is not otherwise a supervisor (i.e., someone empowered to take tangible employment actions),

> a plaintiff [may] still prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place. Evidence that an employer did not monitor the workplace, **failed to respond to complaints**, failed to provide a system for registering complaints, or **effectively discouraged complaints from being filed** would be relevant.

*Vance, supra* (emphasis added).

Title VII or (2) if she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Anthony v. Donahoe*, 460 Fed. App'x. 399, 404 (5th Cir. 2012) (citation and internal quotation marks omitted). "The opposition clause applies when an individual resist[s] . . . confront[s] . . . [or] withstand[s] practices made unlawful by Title VII. *Stingley v. Watson Quality Ford, Jackson, MS*, 836 Fed. App'x. 286, 290 (5th Cir. 2020) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276; 129 S.Ct. 846, 850 (2009)) (internal quotation marks omitted).

According to the SAC, on an unspecified date apparently between July 18 and August 7, 2019, Hill and several co-workers complained amongst themselves about the discriminatory practices at the JPCC. *See* SAC, ¶¶ 8, 12. By August 7, 2019, Sheriff Brown and Warden Ducote had become aware of Hill's complaints and told everyone at a meeting, including Hill, that if they did not care for Riesen's work practices, then they could "hit the door." *Id*.

It is manifest that Riesen's race-based employment practices constituted an unlawful employment practice. *Scott*, 16 F.4th at 1212 (5th Cir. 2021) (quoted source omitted) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice . . ."). In addition, as Hill pointed out in her brief, the EEOC has recognized that employee communications amongst themselves may constitute protected opposition under EEO laws where the employee discusses her belief to another co-employee that she is being discriminated against on the basis of race, and then her employer disciplines her for those protected discussions. *See* https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues#li_Passive (last visited on July 11, 2022) (discussions regarding discriminatory

compensation).[14]  In this case, of course, "[t]he Sheriff and Warden Ducote became aware of [Hill's] complaints."  (SAC, ¶ 12).

JPSO further argues that Hill failed to allege a causal link between her protected activity and her discharge from employment.  "A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013) (quoting *McCoy,* 492 F.3d at 562).  Generally, however, such temporal proximity must be "very close." *Feist, supra* (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508 (2001)).  While the Fifth Circuit has recognized previously that "a time lapse of up to four months" may be sufficiently close, *see Feist, supra*, a more recent panel concluded that "two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation." *Besser v. Texas Gen. Land Office*, 834 Fed. App'x. 876, 885 (5th Cir. 2020) (citations omitted).  Nevertheless, when temporal proximity is not close enough, a plaintiff may rely on other evidence such as an employment record that does not support dismissal or an employer's departure from typical policies. *Feist, supra*.

Here, JPSO was aware of Hill's protected activity at least 63 days before she was fired by Assistant Warden Brazzel.  However, Hill appealed the termination decision to Warden Ducote who, on October 17, 2019, determined that there was insufficient evidence of insubordination

---

[14] For novel issues such as this one, the Fifth Circuit turns to EEOC materials for guidance. *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928 (5th Cir.2021), *cert. denied,* ___ U.S. ___, 142 S.Ct. 563 (2021) (consulting the EEOC Compliance Manual); *see also Crawford, supra* (citing EEOC guidelines).

and that she could return to work. Thereafter, however, Hill never received a call to return to work. If Hill's initial termination was overturned and she was not reinstated approximately October 17, 2019, then the gap between her protected activity and her adverse employment action inches closer to the two and one-half months that the Fifth Circuit has determined is not close enough to establish causation.

Even so, as Hill emphasized in her brief, she has other evidence of causation tied to the fact that the initial termination decision was determined to be unsubstantiated, and then, after having been cleared of wrongdoing, JPSO inexplicably failed to call her to return to work. This sequence plausibly suggests an ulterior motive behind her termination, which suffices to support her retaliation claim at the pleading stage.

## III.    *Monell* Liability

a)    Law

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted). Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to her own injury. *Id*. (citation omitted).

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the

24

violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior. Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

The official policy requirement may be met in various ways, including written policy statements, regulations, ordinances, or "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations and internal quotations omitted). The two most common ways of establishing the existence of a custom or policy is by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

Indeed, "[i]t is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus,* 419 F.3d 348, 352 (5th Cir. 2005); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; 106 S.Ct. 1292, 1298 (1986). Further, "[a]lthough a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create municipal liability only if the municipal actor is a final policymaker." *Louisiana Div. Sons of*

*Confederate Veterans v. City of Natchitoches*, 821 Fed. App'x. 317, 320 (5th Cir. 2020) (citation omitted).

There exists still a third way to impose municipal liability pursuant to a ratification theory, which provides that

> if authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. The theory of ratification, however, has been limited to "extreme factual situations." Therefore, unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom.

*World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (cleaned up) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915 (1988)).

    b)    <u>Discussion</u>

In this case, there is no question but that, as a parish sheriff, Brown is a final policymaker. *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir.2003); *Stuart v. Russell, et al.*, Civ. Action No. 21-01231, 2021 WL 4820244, at *4 (W.D. La. Oct. 15, 2021) (Doughty, J.); *Lester v. Caddo Par.*, Civ. Action No. 15-2008, 2017 WL 6610329, at *6 (W.D. La. Dec. 27, 2017) (citing *Craig v. St. Martin Parish Sheriff*, 861 F. Supp. 1290, 1300 (W.D. La. 1994) and La. Const. Art. 5, § 27).

Also, the SAC is replete with allegations that Sheriff Brown endorsed or ratified Riesen's practices that formed the basis of Hill's hostile work environment claim. For example, at a meeting of nurses, Brown defended Riesen's discriminatory practices and chastised and berated any staff who disapproved of the practices. (SAC, ¶ 12). Furthermore, despite his having been

apprised of Major LeBlanc's repeated use of racial slurs in training videos, Brown took no remedial action until months after Hill's termination from employment. *Id.*, ¶ 11.

In addition, while there are no allegations to suggest that Sheriff Brown was the moving force behind Hill's termination, the court plausibly may infer that such an ultimate employment decision would not be taken without the imprimatur of the employer, Sheriff Brown, who also happens to be the policymaker for his office.

In short, Hill's allegations suffice to support *Monell* liability against Brown as Jackson Parish Sheriff, for her parallel discrimination, hostile work environment, and retaliation claims in violation of § 1981 through § 1983. Therefore, it is recommended that the motion to dismiss be denied in this regard.

## IV.    Qualified Immunity

a)    <u>Law</u>

Hill also seeks to recover against Warden Ducote and Assistant Warden Brazzel, in their individual capacities, under § 1981 through § 1983. When, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."

27

*Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted*); see also Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) (citation omitted); *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority or a 'robust consensus of persuasive authority' that defines the contours of the right in question with a high

28

degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Id.* (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan, supra* (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own. *See Joseph, supra.*

Supervisory officials are not liable under § 1983 for the actions of subordinates under any theory of vicarious liability. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (citation omitted); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."). Rather, to impose individual liability against a supervisor under § 1983, plaintiff must establish each defendant's (1) "personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).[15] In other words, "the misconduct of the subordinate must

---

[15] Supervisory liability obtains "if (1) [the supervisor] affirmatively participates in the acts that

be affirmatively linked to the action or inaction of the supervisor." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997).

"[A] supervisory official may be liable under section 1983 if that official, by action or inaction, demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights." *Id*. (citation omitted).  However, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Id*. (citations and internal quotation marks omitted).

b)    Discussion

In this case, Hill alleged that Warden Ducote was responsible for supervising nurses. (SAC, ¶ 9).  Ducote also was involved in the promotion of Riesen to the position of DON/HSA. *Id*.  Furthermore, by July 18, 2019, Ducote was aware of the acts of discrimination that were being perpetrated by Riesen, to which he not only turned a blind eye, but then also sought to squelch any dissenting opinions of the practices.  *Id*., ¶ 8.  Moreover, Warden Ducote was aware of Hill's complaints of racially discrimination practices in the workplace, but stood idly by at the August 7, 2019, meeting where Sheriff Brown denounced any resistance and urged any disaffected nurse to "hit the door."  *Id*., ¶ 12.

Upon consideration, the court finds that Hill has alleged sufficient facts to show that Ducote was involved in, or aware of the race-based hostile work environment to which Hill was

---

cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury."  *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

subjected, but failed to take any steps to ameliorate the situation.  The following characterization of plaintiff's complaint from *Johnson v. Halstead* applies with equal force here,

> [t]he . . .allegations of [defendant's] inaction after learning about the unconstitutional work environment is the definition of deliberate indifference and thus would amount, if proven, to a violation of clearly established law. Of course, they are just allegations at this point, and the evidence may end up showing the opposite. But the allegations are plausible enough to allow [plaintiff] to engage in the full discovery process and find out if there is evidence to back them up.

*Johnson*, 916 F.3d at 419.[16]

However, the same cannot be said for Hill's remaining claims against Brazzel and Ducote.  First, Hill did not allege sufficient facts to suggest that Assistant Warden Brazzel was personally involved in, or deliberately indifferent to the existence of the racially charged hostile work environment at the JPCC.

Second, while Hill alleged that Brazzel was the official who fired her, several supervisors, including Ducote, effectively overturned that decision and stated that Hill should return to work.  (SAC, ¶ 15).  Ultimately, of course, no one ever called Hill to tell her to return. *Id*.  However, the SAC contains no facts to suggest that Brazzel or Ducote played any role in that omission.  Accordingly, they cannot be liable personally for Hill's discrimination and retaliation claims when they were not responsible for the adverse employment action element of her claims.[17]  In addition, given the unusual circumstances of her termination from employment,

---

[16] In 2019, the Fifth Circuit acknowledged that hostile work environment claims under the Equal Protection Clause have been clearly established for quite some time within the circuit.  *Davis, supra* (citing *Johnson*, 911 F.3d at 274).  Furthermore, the "constitutional prohibitions against race . . . discrimination are so clearly established that a reasonable person would be aware of these rights."  *Id*. (citations omitted).

[17] In a brief footnote embedded in her supplemental brief, Hill alluded to a potential First Amendment retaliation claim.  (Pl. Suppl. Brief, pg. 9 n. 4).  However, she did not advance that

Hill certainly did not adduce any case law to show that Brazzel and Ducote's actions or inaction violated clearly established law.

Accordingly, the undersigned finds that Hill has not overcome Warden Ducote and Assistant Warden Brazzel's qualified immunity defense as to her claims for discriminatory discharge and retaliation, and it is recommended that these claims be dismissed with prejudice.

## V.    Amendment

At the conclusion of her supplemental opposition, Hill claimed entitlement to yet another opportunity to amend her complaint . . . should "all else fail[ ]." Certainly, a court is required to freely grant leave to amend when justice so requires it. FED. R. CIV. P. 15(a)(2). Here, however, the court already has done so – twice. Moreover, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Hill's conditional request for leave to file a theoretical, third amended complaint to set forth unspecified facts does not comply with Rule 15 and is DENIED.[18]

---

claim in her SAC. Even if she had, there is no indication that she made any statements *as a citizen*. *See Johnson*, 916 F.3d at 422-423 (discussing requirements of First Amendment retaliation claim).

[18] Because the recommended resolution of the instant motion disposes of less than all claims and parties, it is not a final judgment and therefore, remains subject to revision at any time before conclusion of the case. Fed.R.Civ.P. 54(b). Consequently, if plaintiff uncovers facts sufficient to support a dismissed claim, then she may seek reconsideration of the court's dismissal of those claims, together with a proposed amended complaint. It goes without saying, however, that plaintiff may not dither in her efforts.

## <u>Conclusion</u>

As instructed by *Iqbal*, the court has accorded no weight to the generous dose of conclusory allegations set forth in plaintiff's complaint.  *See Iqbal, supra.*  Plaintiff's remaining allegations contain facts sufficient to confer plausibility upon her claims against 1) Sheriff Brown, in his official capacity, for discrimination, hostile work environment, and retaliation under Title VII and § 1981 through § 1983; and 2) Warden Ducote, in his individual capacity, for the hostile work environment claim only under § 1981 through § 1983.

Accordingly,

IT IS RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 18], as supplemented, filed by Defendants Sheriff Andy Brown, Richard Brazzel, and Warden Tim Ducote be GRANTED IN PART, and that the following claims be DISMISSED WITH PREJUDICE:

1)      Plaintiff's claim under 42 U.S.C. § 1985(3) against all Defendants;

2)      Plaintiff's claims against Sheriff Andy Brown in his individual capacity; and

3)      Plaintiff's claims against Warden Tim Ducote, in his official capacity; any Title VII claim asserted against him; plus any individual capacity claim against him for discrimination or retaliation under 42 U.S.C. § 1981 through § 1983; and

4)      Plaintiff's claims against Assistant Warden Richard Brazzel, in their entirety.

IT IS FURTHER RECOMMENDED that the motion to dismiss, as supplemented, [doc. # 18] otherwise be DENIED.[19]

---

[19] To the extent that the undersigned has expanded upon, or diverged from the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he or she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this **18th day of July, 2022**.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).