UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DIWANETRA L HILL** | **CASE NO. 3:21-CV-02516** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **ANDY BROWN ET AL** | **MAG. JUDGE MCCLUSKY** |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (R. Doc. 61) filed by the defendants, Andy Brown ("Sheriff Brown"), and Tim Ducote ("Warden Ducote") (together "Defendants"). The plaintiff, Diwanetra Hill ("Nurse Hill"), filed an Opposition (R. Doc. 71), and Defendants filed a Reply (R. Doc. 74).

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**, and Nurse Hill's claims against Defendants are **DISMISSED WITH PREJUDICE.**

### I. BACKGROUND

This is an employment discrimination case brought by Diwanetra Hill, a former nurse at the Jackson Parish Correctional Center ("JPCC").[1] She brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and under 42 U.S.C. § 1981–1983, against her former alleged employer(s) Sheriff Brown and Warden Ducote.[2] Nurse Hill, an African-American female, alleges that

---

[1] R. Doc. 27 at 1, 3.
[2] *Id.* at 1–3.

1

she suffered racial discrimination during her employment with Defendants and, ultimately, that she was "discharged [] based upon her race."[3] She also makes a claim for "retaliation in the form of discharge and hostile working environment."[4] Specifically, Nurse Hill alleges that Defendants permitted "firing blacks and replacing them with less qualified white employees"; giving white nurses the easy jobs which allowed them to leave early; questioning nurses' treatment of black prisoners; unequally treating black prisoners; not letting black nurses into the nurse's office; applying a new cell phone policy, leave policy, and dress code unequally; and enforcing "discriminatory grooming codes for inmates such as requiring beards to be shaven *even for those with diabetes*."[5]  Nurse Hill contends that when Defendants became aware of workplace issues, the nurses were "hollered at" and threatened with termination.[6] Ultimately, Nurse Hill claims that she was fired for alleged insubordination—"wrongfully, pretextually[,] and incorrectly[.]"

At the motion to dismiss stage, the Court dismissed all of Nurse Hill's claims except for: (1) the discrimination, hostile work environment, and retaliation claims under Title VII and § 1981 through § 1983 against Sheriff Brown in his official capacity, and (2) the hostile work environment claim under § 1981 through § 1983 against Warden Ducote, in his individual capacity.[7]

---

[3] *Id.* at 12.
[4] *Id.* at 13.
[5] *Id.* at 6–8 (emphasis added).
[6] *Id.* at 8.
[7] *See* R. Doc. 33; R. Doc. 34.

Defendants filed the instant Motion, arguing that Nurse Hill lacks evidence supportive of her claims of discrimination, and that her Title VII claims are barred as she did not timely file her charge with the EEOC.[8] In their Motion, Defendants discuss each of the alleged discriminatory acts that Nurse Hill suffered and explain why the acts either are not discriminatory or are not supported by the record.[9] Nurse Hill filed an opposition brief[10] arguing the opposite, and Defendants replied[11] with further clarification. We address these contentions below.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

---

[8] R. Doc. 61 at 17–42.
[9] *See generally id.*
[10] *See generally* R. Doc. 71.
[11] *See generally* R. Doc. 74.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

### III. ANALYSIS

While Nurse Hill brings her employment discrimination claims under Title VII, §1981, and §1983, the same evidentiary framework—the Title VII framework—applies to each of her claims, so we start there.[12] *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

Under Title VII, a plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). Where, as here, the plaintiff offers no direct evidence of intentional race discrimination, we analyze the claim under the burden-

---

[12] Nurse Hill's Title VII claims are likely barred for failure to timely file a charge with the EEOC. But because she makes claims under §§ 1981-1983, and because of the ultimate result here, we continue with our Title VII analysis.

4

shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy*, 492 F.3d at 556; *see also Jones v. Overnite Transp. Co.,* 212 F. App'x 268, 272-73 (5th Cir. 2006). "Under *McDonnell Douglas*, a plaintiff has the initial burden of establishing a prima facie case of discrimination. If she does so, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If the defendant can provide a reason, then the burden shifts back to the plaintiff to prove that the reason is pretextual." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021). (internal quotation marks and citations omitted).

To make out a prima facie case of race discrimination at the first step of *McDonnell Douglas*, a plaintiff must demonstrate that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556 (citation omitted); *see also Hamilton*, 79 F.4th at 506 (defining "adverse employment action" for Title VII purposes).

### A. Discriminatory Termination

Nurse Hill likely meets her initial burden with regard to her discharge claim. The record supports that she (1) is Black,[13] (2) was qualified to be a prison nurse,[14] (3) was discharged,[15] and even perhaps (4) that a white nurse replaced her.[16]

---

[13] R. Doc. 67-5 at 1.
[14] *Id.*
[15] R. Doc. 61-3 at 36, 256.
[16] R. Doc. 67-17 at 8–15.

5

That is where her good news ends. Defendants have shown a legitimate, nondiscriminatory reason for Nurse Hill's termination—her consistent failure to follow orders and rules. Nurse Hill was written up at least nine times during her seven-month employment with Defendants—primarily for refusing to perform her assigned duties. *See* R. Doc. 61-3 at 41–49. Chronic insubordination is considered a legitimate, nondiscriminatory reason for termination. *Chaney v. New Orleans Pub. Facility Mgmt.*, 179 F.3d 164, 167 (5th Cir. 1999). So, the presumption of discrimination dissipates. *Wallace v. Methodist Hospital System*, 271 F.3d 212, 219 (5th Cir. 2001). With the burden back on Nurse Hill's shoulders, she fails to show that this reason is, in fact, pretextual.

Nurse Hill may establish pretext either through evidence of disparate treatment or by showing that Defendants' explanation is false or "unworthy of credence." *Wallace,* 271 F.3d at 220. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). We ask then, "whether the evidence supports an inference that [Defendants] intentionally discriminated against [Nurse Hill], an inference that can be drawn if its proffered reason was not the real reason for discharge. *See Laxton v. Gap Inc.,* 333 F.3d 572, 579 (5th Cir. 2003); *see also Sandstad*, 309 F.3d at 897–99. We find no such evidentiary support.

1. *Disparate Treatment*

Every one of Nurse Hill's allegations of disparate treatment is either contradicted by the record, not discrimination, not hers to make, or all the above.

Most fatally, she provides no record evidence that when faced with the same insubordination, a white nurse was disciplined less than she was. *Lee v. Kansas City S. Ry. Co.,* 574 F.3d 253 (5th Cir. 2009).[17] And as for the alleged discriminatory acts further removed from Nurse Hill's termination, they do not support her case either. She alleges that she was affected by nepotism at JPCC. *See, e.g.,* R. Doc. 27 at 10. Nepotism—even when it leads to same-race hiring—is not employment discrimination under Title VII. *Harville v. City of Houston, Mississippi,* 945 F.3d 870, 876–78 (5th Cir. 2019). Nurse Hill alleges that she was asked to wear more conservative clothing (and that white nurses were not). R. Doc. 71 at 23. White nurses were also asked to modify their dress—for their safety—because they work at a prison. R. Doc. 61-4 at 249. She alleges that she was not allowed to use her cell phone. R. Doc. 61-4 at 669-70. No other non-administrative staff could either. *See id.* She alleges that she couldn't take smoke breaks like the White nurses who smoke. R. Doc. 67-5 at 3. She doesn't smoke. *See id.* It should be clear from these quibbles that Nurse Hill's claims of disparate treatment are meritless. But to be sure, we will dispense now the most-discussed alleged discriminatory act—the training video.

Nurse Hill complains that she, along with the other prison staff, was required to watch a training video with "background music contain[ing] racial slurs, like [the n-word], and had no relevance to the training." R. Doc. 27 at 8. The training was

---

[17] We realize the discussion in *Lee* is technically about the fourth element of the prima facie case, but because replacement with a white comparator satisfies the discriminatory termination version of the framework, the discussion of disparate treatment must be had at this juncture instead. *See Ernst v. Methodist Medical Hospital Sys.,* 1 F.4th 333, 339 (5th Cir. 2021) (citing *Story v. Gibson ex rel. Dep't of Veteran Affs.,* 896 F.3d 693, 698 (5th Cir. 2018)).

7

about prison rape and the video was about prison rape. *See* R. Doc. 61-3 at 161–67. Illicit rap lyrics in the background of an HBO documentary about prison rape played during mandatory training about prison rape do not constitute actionable discrimination under Title VII. *See Meritor*, 477 U.S. at 67. It is thus an incredible leap for Nurse Hill to equate this incident to cases where supervisors and/or coworkers use the n-word. *Compare* R. Doc. 71 at 27–28 (citing *Ash v. Tyson Foods, Inc.*, 546 US 454, 456 (2006); *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). Accordingly, as Nurse Hill has failed to show substantial evidence that she was disparately treated and thus discriminatorily fired, or that Defendants' justification for her termination is untrue,[18] her wrongful termination claim fails. *See Wallace,* 271 F.3d at 220.

For the above reasons, Nurse Hill's lightly-pled hostile work environment claim must also be denied. *See* R. Doc. 27 at 14. To show a hostile work environment "the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). No reasonable jury could find the training video incident to have created a hostile work environment. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (cleaned up) ("This standard, which we reaffirm today, takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury.

---

[18] Neither Warden Ducote's initial confusion about the particulars of Nurse Hill's discipline/disciplinary record, nor his efforts to mitigate any potential damage to her career by allowing her to resign or transfer, suffice as substantial evidence that Defendants' reason for termination is "unworthy of credence." *See Wallace,* 271 F.3d at 220.

As we pointed out in *Meritor*, mere utterance of an ... epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."). Otherwise, we have already outlined why Nurse Hill has shown neither severity nor pervasiveness as to her other claimed discriminatory acts. *See ante* at 7–8.

### B. Retaliation

Nurse Hill also makes a claim for retaliation under Title VII. *See* R. Doc. 27 at 11–12. Just as above, the *McDonnell Douglas* test is applicable to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). A plaintiff establishes a prima facie case of retaliation under 42 U.S.C. § 2000e–3(a) by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Stewart v. Mississippi Transp. Comm'n,* 586 F.3d 321, 331 (5th Cir. 2009).

Once the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). To survive summary judgment, the plaintiff must then offer evidence that (1) the defendant's reason is not true but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for

9

its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative). *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Smith v. Xerox Corp.*, 602 F.3d 320, 330–33 (5th Cir. 2010). However, according to the Fifth Circuit, "[a] plaintiff can only avoid summary judgment on but for causation by demonstrating a conflict in substantial evidence on this ultimate issue." *Nunley v. City of Waco*, 440 Fed. Appx. 275, 280–81 (5th Cir. 2011) (cleaned up).

Nurse Hill does not pass go. We needn't even reach the record, as her complaint fails to plausibly allege that she ever engaged in activity protected by Title VII. *Stewart,* 586 F.3d at 331; *see* R. Doc. 27. But to be sure, the record evinces no such protected activity either. And even if we could reach the employer's reasoning, we have already determined that Nurse Hill's chronic insubordination constituted a "legitimate" (and here, *nonretaliatory*) reason for termination. *See ante* at 6 (citing *Chaney,* 179 F.3d at 167). Accordingly, she has no retaliation claim either.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (R. Doc. 61) is **GRANTED**, and Diwanetra Hill's claims against Andy Brown and Tim Ducote are **DISMISSED WITH PREJUDICE.**

**MONROE, LOUISIANA**, this 8th day of January, 2025.

                                                  Terry A. Doughty
                                       United States District Judge